IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 04-20160-01-KHV |
| IGNACIO HERNANDEZ, ) | |
| a/k/a LUIS CASTELLANO, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

On December 9, 2004, a grand jury returned a three-count indictment which charged Ignacio Hernandez, a/k/a Luis Castellano, with shipping, transporting, possessing and receiving ammunition and a firearm in violation of 18 U.S.C. §§ 922(a)(1) and 924(a)(2), possessing with intent to distribute approximately 3.5 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). See Indictment (Doc. #2). This matter is before the Court on defendant's Motion To Suppress Pursuant To The Fourth Amendment Of The United States Constitution (Doc. #21) filed March 14, 2005. On April 4, 2005, the Court held an evidentiary hearing. For reasons set forth below, the Court overrules defendant's motion.

**Factual Background**

Based on the testimony and exhibits at the hearing, the Court finds the following facts:

On October 25, 2004, Kansas City, Kansas police officers Curtis Murphy and Eric Ibanez responded to a disturbance report at 4809 Woodend Avenue. Upon arriving at the scene, the officers

spoke to the next-door neighbor who had reported the incident. The neighbor stated that she thought the disturbance related to drugs and that she had seen four black males in a white car and a white male in his thirties driving a white truck. Murphy knew the neighbor because she had complained numerous times about possible drug activity at 4809 Woodend Avenue.

After speaking with the neighbor, Murphy discovered outstanding warrants for the arrest of Brenda Spencer, John Ortega and Donald Spencer, who all resided at 4809 Woodend Avenue. Murphy went to the house and knocked on the front door. When Ortega answered the door, Murphy handcuffed him and placed him under arrest. Donald Spencer then went to the door and told Murphy that only he and Ortega were in the house. Spencer went back in the house and shut the door, and Murphy returned to the neighbor's house. When he reported that only two people remained at 4809 Woodend Avenue, she disagreed, stating that a black man who drove a black van (which was in the driveway) was also in the house.

Murphy returned to 4809 Woodend Avenue and knocked on the door. When Spencer answered, Murphy asked why he had lied about the other man in the house. Spencer replied that he did not know, and Murphy asked him to have the other man come to the door. Spencer shut the door and left Murphy waiting on the front porch. Brenda Spencer then went to the door and told Murphy that the other man – whom she called "Louie" – was running out the back door.

Murphy ran around the house and saw "Louie" climbing over a chain link fence. When Murphy ordered him to stop, he replied "no" and started running. Murphy ran after him. An unknown hispanic man observed the chase and also ran after "Louie." After running about a quarter of a mile through streets and back yards, "Louie" jumped into a five-feet deep concrete drainage ditch which contained several inches

of water, mud and sand.[1] Murphy and the other pursuer jumped into the ditch and apprehended defendant. Defendant resisted, and Murphy struck his legs with a collapsible baton. Officer Ibanez then arrived on the scene and used his taser to stun defendant.

Eventually, the officers gained control over defendant and handcuffed him in drainage ditch. Murphy conducted a pat down and found nothing. Other officers arrived at the scene and helped get defendant – who was still handcuffed – out of the ditch. Because defendant was having difficulty breathing, officers called for emergency medical help. During their examination, emergency workers told Murphy that they saw something large and heavy in a zippered compartment in the bottom of defendant's left pant leg.[2] Murphy felt the object and immediately knew that it contained a weapon. He unzipped the pocket and removed a black bag. Inside the bag, Murphy found, inter alia, a loaded gun, narcotics and over $2,000 dollars in cash.

## Analysis

Defendant asserts that Murphy did not have reasonable suspicion to stop him. Consistent with the Fourth Amendment, under Terry v. Ohio, 392 U.S. 1 (1968), an officer may conduct a brief investigatory stop when he has a reasonable, articulable suspicion that the person might be involved in criminal activity. Id. at 21-22, 30. If the officer has such suspicion, he may also conduct a protective frisk of the suspect's outer clothing if he reasonably believes that the suspect might be armed and presently dangerous. Id. at

---

[1] The record is unclear how deep the water was. Murphy testified that when he got out of the ditch, he was filthy and wet and had mud on his boots and pant legs.

[2] Defendant was wearing nylon pants with a zipper at the bottom of his pant leg. Murphy apparently did not notice the compartment at the time of the initial pat down because it was under water in the drainage ditch and/or because defendant was standing on it under water in the drainage ditch.

27, 30. The sole justification for the search is the protection of the officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the officer. Id. at 29. In evaluating the validity of a Terry stop, the Court considers the totality of the circumstances. See United States v. Cortez, 449 U.S. 411, 417 (1981).

Terry sets up a two-prong test for the reasonableness of investigatory detentions and weapon searches. See Gallegos v. City of Colo. Springs, 114 F.3d 1024, 1028 (10th Cir. 1997). First, the Court must decide whether the detention was "justified at its inception." Id. (quoting Terry, 392 U.S. at 20). Under this prong, the government must point to specific and articulable facts which, together with rational inferences from those facts, reasonably warrant the intrusion. Terry, 392 U.S. at 21. Those facts must tend to show that the detainee has committed or is about to commit a crime. Gallegos, 114 F.3d at 1028 (citing Florida v. Royer, 460 U.S. 491, 498 (1983)). Second, the Court must find that the officer's actions were "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996) (quoting Terry, 392 U.S. at 20). At both stages, the Court determines the objective reasonableness of the officer's suspicions, taking into account the totality of the circumstances and information available to the officer. United States v. Lang, 81 F.3d 955, 965 (10th Cir. 1996).

Defendant contends that the stop was not justified at its inception. Specifically, defendant argues that at the time Murphy chased him, officers did not have any basis to suspect that he was involved in criminal activity. He states that the investigation into the disturbance report had ended, that his car did not match the neighbor's description and that police did not have a warrant for him. Defendant further asserts that the fact that he ran from police, standing alone, is not enough to provide reasonable suspicion.

In support of his motion, defendant relies on <u>Illinois v. Wardlow</u>, 528 U.S. 119 (2000). On these facts, however, the case supports the government's position. In <u>Wardlow</u>, a police caravan arrived at an area of Chicago which was known for heavy drug trafficking. On seeing the police, Wardlow fled. Officers chased him, conducted a pat-down search, found a gun and arrested him. The Supreme Court found that while presence in a high-crime area, standing alone, is not enough to support reasonable suspicion, an individual's unprovoked flight upon noticing police suggests wrongdoing. <u>Id.</u> at 124-25. The Supreme Court therefore concluded that officers had reasonable suspicion that Wardlow was involved in criminal activity. In so concluding, it noted that reasonable suspicion must be based on commonsense judgments and inferences about human behavior and that nervous and evasive behavior is a pertinent factor in determining reasonable suspicion. The Supreme Court further found that by its very nature, flight is not "going about one's business" – in fact, it is just the opposite. <u>Id.</u> at 125. The Supreme Court concluded that defendant's unprovoked flight from a high-crime area provided officers reasonable suspicion to justify a <u>Terry</u> stop.

On the facts of this case, Murphy had a reasonable suspicion to conduct a <u>Terry</u> stop. When he inquired into a reported disturbance involving possible drug activity, Spencer lied to him and said that no one else was in the house. When Murphy asked to speak to defendant, he darted out the back door, climbed a fence and tried to escape. As in <u>Wardlow</u>, defendant's flight – combined with the fact that Spencer had lied to police about his presence in the home – created reasonable suspicion that defendant was involved in criminal activity. <u>See id.</u> at 124-25.

Defendant argues that the use of handcuffs and physical force converted the <u>Terry</u> stop into an arrest which required probable cause. The Court disagrees. The Tenth Circuit Court of Appeals has held

that "the use of firearms, handcuffs, and other forceful techniques does not necessarily transform a Terry detention into a full custodial arrest . . . when 'the circumstances reasonably warrant such measures.'" United States v. Melendez-Garcia 28 F.3d 1046, 1052 (10th Cir. 1994) (quoting United States v. Perdue, 8 F.3d 1455, 1463-64 (10th Cir. 1993)).  Furthermore, it has noted as follows:

> There are no hard-and-fast rules regarding the reasonableness of force used during investigatory stops, and prior cases have eschewed establishing any bright-line standards for permissible conduct.  It is clear, however, that, because safety may require the police to freeze temporarily a potentially dangerous situation, both the display of firearms and the use of handcuffs may be part of a reasonable Terry stop.

United States v. Merkley, 988 F.2d 1062, 1064 (10th Cir. 1993).  In determining the allowable scope of an investigative detention, "common sense and ordinary human experience must govern over rigid criteria" and the Court should not engage in "unrealistic second-guessing" of a police officer's decision.  United States v. Neff, 300 F.3d 1217, 1220 (10th Cir. 2002) (quoting United States v. Sharpe, 470 U.S. 675, 685 (1985)).

Here, defendant had fled from police officers and physically resisted their attempts to subdue him in the drainage ditch.  Officers were therefore justified in using force to restrain him.  Even though the initial frisk did not reveal weapons, officers had a reasonable basis to believe that defendant might try to run away or be physically aggressive towards them.  See, e.g., United States v. Vargas, 369 F.3d 98, 102 (2d Cir. 2004) (weapons and handcuffs reasonable where, inter alia, suspect demonstrated unwillingness to cooperate with investigation by fleeing when originally approached and continuing to struggle with officer following stop); Melendez-Garcia, 28 F.3d at 1052-53 (officers not justified in displaying firearm and handcuffing suspects who pulled cars off road and stepped out of cars in full compliance with police orders).

Defendant complains that he should have been free to go after Murphy frisked him and found no weapons. At the time of the frisk, however, Murphy had just apprehended defendant. He had not yet had a chance to investigate the suspicious circumstances which justified the stop in the first place, i.e. why Spencer had lied about defendant's presence in the house and why defendant darted from the house and fled when Murphy ordered him to stop. By its very nature, a Terry stop is involuntary and the suspect is not free to avoid it by flight. See United States v. Haye, 825 F.2d 32, 35 (4th Cir. 1987). To that extent, defendant's freedom was limited and Murphy was authorized to use such reasonable force as was necessary to accomplish the purpose of the investigative stop. Id. On these facts, Murphy was justified in conducting a Terry stop and the scope of the stop was reasonable under the circumstances.

**IT IS THEREFORE ORDERED** that defendant's Motion To Suppress Pursuant To The Fourth Amendment Of The United States Constitution (Doc. #21) filed March 14, 2005 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that trial is set for June 20, 2005 at 1:00 p.m.

Dated this 2nd day of June, 2005, at Kansas City, Kansas.

>   s/ Kathryn H. Vratil
>   KATHRYN H. VRATIL
>   United States District Judge